.IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY HUMPHRIES, | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| BERGSTROM, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1.      Plaintiff, Tiffany Humphries, brings this action to redress sex discrimination (related to pregnancy status) by her former employer Bergstrom, Inc.  Ms. Humphries was fired less than a week after she told her employer she was pregnant, and the many purported explanations the employer has since offered for the termination have been vague, inconsistent, and unsupported by documents or records. Plaintiff brings this action under 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      This Court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this District.

### PARTIES

4.      Plaintiff Tiffany Humphries ("Ms. Humphries") is a citizen of the United States, a

resident of Dolton, Illinois, and a former employee of Bergstrom, Inc.

5.     Defendant Bergstrom, Inc. ("Bergstrom") is company that manufactures cabs for commercial trucks, with a factory in Joliet, Illinois.

## STATEMENT OF FACTS

6.     On August 6, 2013, Ms. Humphries began work at the Bergstrom factory in Joliet, Illinois.

7.     Ms. Humphries was placed at Bergstrom by First Staff Temporary Agency ("First Staff").

8.     Ms. Humphries worked as an Assembler in Bergstrom's Large Line Department, and her job was to build seats as part of an assembly line.

9.     Ms. Humphries's regular work hours were 7 a.m. to 3:30 p.m. on Monday through Friday.

10.     Ms. Humphries signed a document at the start of her employment stating that mandatory overtime could be required.

11.     During her brief time at Bergstrom, there were occasions when overtime was offered to employees, but Ms. Humphries was never told that she personally was required to work overtime on any given day.

12.     On or around August 12, 2013, Ms. Humphries spoke with her direct supervisor, Ms. Adalin Martinez, about overtime requirements. Ms. Martinez asked Ms. Humphries why she was not staying at work after the end of her scheduled shift. Ms. Humphries replied that she would stay for any mandatory overtime, but would otherwise leave at the end of her shift.

13. Following the conversation with Ms. Martinez on or around August 12, 2013, Ms. Humphries was never again approached by anyone at Bergstrom or First Staff about overtime, nor was she ever disciplined, warned, or reprimanded for not working overtime.

14. On August 26, 2013, Ms. Humphries called First Staff to clarify overtime requirements. Ms. Humphries was told by First Staff that she was required to work her scheduled shifts and any mandatory overtime.

15. On August 26, 2013, Ms. Humphries also spoke with Mr. Keith Grannan, the Floor Manager at Bergstrom, to clarify overtime requirements. Ms. Humphries approached Mr. Grannan on the factory floor in an attempt to clarify which overtime hours were mandatory and which were voluntary. Mr. Grannan told Ms. Humphries he did not want to have the conversation on the factory floor.

16. Following her discussion with Mr. Grannan, and on the same day, August 26, 2013, Ms. Humphries used her lunch break to request a meeting with the human resources director of Bergstrom, Mr. Rick Nevell.

17. On August 28, 2013, Ms. Humphries was called to Mr. Nevell's office to discuss overtime requirements. Mr. Grannan was also present. Mr. Nevell and Mr. Grannan told Ms. Humphries that, unless it was mandatory, she did not need to stay if she was unable or unwilling to work the overtime.

18. At the conclusion of the August 28, 2013 meeting, Ms. Humphries asked Mr. Nevell if she could speak privately with him. Ms. Humphries then told Mr. Nevell she was pregnant. She also said she would be able to work mandatory overtime and, occasionally, some of the offered voluntary overtime, but that she would not be able to stay and work all voluntary overtime shifts offered.

19.     On September 3, 2013, Ms. Humphries was summoned to a meeting with Mr. Joe Bandza, the Plant Manager at Bergstrom.  Mr. Bandza told her she was being discharged by Bergstrom because her "quality level was down."

20.     After Mr. Bandza discharged Ms. Humphries, and at that same meeting, Ms. Humphries asked if she was discharged because of her pregnancy. Neither Mr. Bandza nor Ms. Shayla Smith, the Human Resources representative in attendance, answered the question.

21.     The only time Ms. Humphries was informed about a problem with the quality of her work was during the second week of her employment, when a seat she had worked on was returned to her because a bolt was not sufficiently tight. Ms. Humphries was never told on any other occasion that her work quality was low, nor was she ever warned, disciplined, or reprimanded about low quality work.

22.     On September 3, 2013, following her discharge, Ms. Humphries went to the office of First Staff, the agency which placed her at Bergstrom.  Ms. Alicia Smith, a Senior Staffing Consultant at First Staff, told Ms. Humphries that Bergstrom had told her that Ms. Humphries's employment "did not work out."

23.     On September 5, 2013, Mr. Bandza sent an e-mail to seven people informing them that Ms. Humphries was no longer working at Bergstrom, and listing the reason for the termination as poor work performance, specifically "poor quality" and "lack of velocity."

24.     After Ms. Humphries filed a charge with the Illinois Department of Human Rights, Bergstrom claimed that it discharged her for failure to work mandatory overtime hours.

## CLAIMS FOR RELIEF

### Count I – Pregnancy Discrimination

25.     Ms. Humphries incorporates and realleges paragraphs 1-24, above, as if fully set

forth herein.

26.    Defendant terminated Ms. Humphries's employment because of her sex and, specifically, her pregnancy status.

27.    Defendant's termination of Ms. Humphries's employment constituted intentional and purposeful discrimination.

28.    As a result of Defendant's discriminatory termination of Ms. Humphries's employment, she suffered humiliation, embarrassment, and severe emotional distress, as well as loss of employment.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Tiffany Humphries, prays that this Court:

A.    Award Plaintiff lost wages and lost benefits of employment;

B.    Order that Plaintiff be reinstated, or, if reinstatement is not feasible, award her future lost wages;

C.    Award Plaintiff compensatory damages for the damages she suffered from Defendants' discriminatory conduct;

D.    Award Plaintiff punitive damages;

E.    Award Plaintiff pre-judgment interest;

F.    Award Plaintiff her reasonable attorney's fees and costs of litigation, including any expert witness costs;

G.    Award Plaintiff equitable relief in the form of a tax component to offset negative tax consequences of lump sum damages;

H.    Grant such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on issues properly triable to a jury.

Dated: September 28, 2015

Respectfully submitted,

_____
Attorney for Plaintiff

Timothy Huizenga
LAF
120 S. La Salle, Ste. 900
Chicago, IL 60603
(312) 347-8377

EEOC Form 161-B (11/09)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Tiffany Humphries<br>c/o Timothy Huizenga, Esq.<br>120 S LaSalle St<br>Suite 900<br>Chicago, IL 60603 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2013-02542 | Daniel Lim,<br>State & Local Coordinator | (312) 869-8082 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman /sr*
_____          September 18, 2015
          **Julianne Bowman,**                              *(Date Mailed)*
          **District Director**

Enclosures(s)

cc:     **BERGSTROM CLIMATE CONTROL**
        c/o Troy Haggestad, Esq.
        **William McCarthy LLP**
        120 W State St
        Suite 400
        Rockford, IL 61101